**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **CHANEL, INC.,** | ) | |
| **a New York Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:09-cv-02835-cgc** |
| | ) | |
| **ZHONG ZHIBING, a/k/a ZHONG** | ) | |
| **ZHIPING, and DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING CHANEL, INC.'S EX PARTE MOTION TO AUTHORIZE
ALTERNATE SERVICE OF PROCESS ON DEFENDANT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 4(f)(3)**

Before the Court is Plaintiff Chanel, Inc.'s ("Chanel") Ex Parte Motion to Authorize Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3), which requests to serve Defendant by electronic mail ("e-mail").  (D.E. #7).  For the reasons set forth herein, Chanel's motion is hereby GRANTED.

**I. Introduction**

This case arises from Chanel's allegations that Defendant Zhong Zhibing, a/k/a Zhong Zhiping, has committed federal trademark infringement and counterfeiting, false designation of origin, and cyberpiracy in violation of § 32, § and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 & 1125(a).  Specifically, Chanel asserts that Defendant is illegally promoting, advertising, selling, offering for sale, and distributing products bearing exact copies of Chanel-registered trademarks in the Western District of Tennessee through various fully interactive commercial internet websites

("Subject Domain Names").[1]

Subsequent to filing the instant Complaint, Chanel initiated an investigation into Defendant's name, physical address, electronic mail address, and other identifying information. Initially, Chanel relied upon its intellectual property counsel Stephen M. Gaffigan ("Gaffigan") to access and perform "WHOIS" searches regarding the Subject Domain Names. Pl.'s Mot. to Authorize Alt. Service, Decl. of Stephen M. Gaffigan (Gaffigan Decl.), Ex. 2, ¶¶ 2-3. Gaffigan's investigation revealed the purported physical and e-mail addresses registered to the Subject Domain Names. Id. ¶ 3.

Following the initial investigation by Gaffigan, Chanel retained Robert Holmes ("Holmes"), an officer at a licensed private investigative firm, to further investigate the suspected sale of counterfeit Chanel products by Defendant on the Subject Domain Names. Id., Decl. of Robert Holmes ("Holmes Decl."), Ex. 3, ¶¶ 1-3. Holmes accessed one of the Subject Domain Names—amazingbag.com—and placed an order for the purchase of a Chanel-branded handbag. Id. ¶ 4. Holmes's purchase was "processed entirely online, which included providing shipping and billing information, payment, and confirmation." Id. Holmes paid for the handbag via Western Union, and the payee information provided listed "Zhiping Zhong, Guangzhou, China." Id. ¶ 5. Holmes sent an e-mail to amazingbag@hotmail.com regarding the status of the order from amazingbag.com. Id. ¶ 6. Shortly thereafter, Holmes received an e-mail message from "zhongzhiping <amazingbag@hotmail.com>" confirming the order and payee information. This e-mail message listed additional domain names affiliated with amazingbag.com, including go4bags.com, 86replica.com, and ioffershoes.com. Id.

In addition to Holmes's purchase, Holmes sent several "pretextual e-mails" to Defendant

---

[1] The Subject Domain Names are listed in the Declaration of Stephen M. Gaffigan. Pl.'s Mot. to Authorize Alt. Service, Decl. of Stephen M. Gaffigan (Gaffigan Decl.), Ex. 2, ¶¶ 2-3.

Zhibing via the e-mail addresses amazingbag@gmail.com, amazingbag@hotmail.com, asonzhong@yahoo.com, gorxleather@yahoo.com.cn, ioffershoes@hotmail.com, and ioffershoes@yahoo.com.cn, the e-mail addresses listed by Defendant on the Subject Domain Names and on the WHOIS data for the Subject Domain Names. Id. ¶ 7. Holmes received return receipts demonstrating that all of these pretextual e-mails were received on January 14, 2010—the same day as they were sent. Id. Holmes also sent a pretextual e-mail to wei573@sohu.com, the e-mail address listed on the WHOIS data for replicascarf.com, but Holmes did not receive a response from Defendant's server indicating it was received. Id. at n.1. Holmes conducted extensive investigation into Defendant's operations through "multiple online databases, including known websites, social networks, directories, newsgroups, auctions, and message boards," but he was not able to identify a valid physical address for service of process on Defendant. Id. ¶ 8. However, Holmes opines that, based upon his investigation, Defendant will receive actual notice of this action if process is served at the e-mail addresses amazingbag@gmail.com, amazingbag@hotmail.com, asonzhong@yahoo.com, gorxleather@yahoo.com.cn, ioffershoes@hotmail.com, and ioffershoes@yahoo.com.cn. Id.

In further efforts to locate Defendant's physical address, Chanel retained Huang Yu Ting ("Ting"), an investigator in the People's Republic of China. Id., Ex. 5, ¶ 2. Ting affirms that he is a lifelong resident of Guangzhou, Guangdong, China and is "extremely familiar with the methods for locating proper addresses" in China. Id. Ting analyzed the physical address Defendant listed under his websites operating under the Subject Domain Names and determined that the address is not valid. Id. ¶ 4. Additionally, Ting analyzed the physical addresses provided by Defendant in the Registrant contact section of the WHOIS records of the Subject Domain Names and determined

these addresses are not valid.  Id. ¶¶ 5-6.  Ting attempted to contact Defendant via telephone at two

contact numbers listed on his websites, and he was greeted by a male voice who admitted he was

selling "AAA quality handbags online" via the commercial Internet websites go4bags.com and

amazingbag.com, but the operator "refused to disclose his address."  Id. ¶¶ 7-8.  Ting placed

"several" calls to two other telephone numbers listed in the Registrant contact section of the WHOIS

records for two of the Subject Domain Names in an attempt to reach Defendant, but his calls were

not answered.  Id. ¶ 10.  Finally, Ting conducted searches of several public databases and directories

available in China, including phone directories for Guangzhou, Guangdong, China, but he was not

able to find a valid listing or physical address for service of process upon Defendant.  Id. ¶ 11.

As a result of the information obtained in their investigation, Chanel filed the instant motion

requesting that the Court authorize service of process via electronic mail pursuant to Rule 4(f)(3)

of the Federal Rules of Civil Procedure.

## II.  Analysis

Federal Rule of Civil Procedure 4(f) ("Rule 4(f)") provides the acceptable means of serving

individuals in a foreign country:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person who waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> > (B) as the foreign authority directs in response to a letter rogatory or
> > letter of request; or
>
> > © unless prohibited by the foreign country's law, by:
>
> > > (I) delivering a copy of the summons and of the complaint to the individual personally; or
>
> > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> > (3) <u>by other means not prohibited by international agreement, as the court orders.</u>

Fed. R. Civ. P. 4 (emphasis added). The Sixth Circuit has yet to consider the propriety of serving process by e-mail under Rule 4(f). <u>See Popular Enters., LLC v. Webcom Media Group, Inc.</u>, 225 F.R.D. 560, 561 (E.D. Tenn. 2004). Nonetheless, the plain text of the Rule and case law from other circuits provide guidance about methods of service that are acceptable alternatives. <u>See, e.g.</u>, <u>Rio Props. V. Rio Int'l Interlink</u>, 284 F.3d 1007, 1016-17 (9th Cir. 2002).

Rule 4(f) provides that a party may use an alternative means to effect service if two conditions are met: (1) the party obtains the permission of the court, and (2) an international agreement does not otherwise prohibit the means of service approved. <u>See</u> Fed. R. Civ. P. 4(f)(3); <u>Rio Props.</u>, 284 F.3d at 1014. The current text of the rule requires a party first to use "any internationally agreed means of service that is reasonably calculated to give notice," citing the method of service provided by the Hague Service Convention as an example. Fed. R. Civ. P. 4(f)(1). <u>But</u> <u>see</u> <u>Rio Props.</u>, 284 F.3d at 1015 (interpreting a prior version of the rule in which the conjunction "or" appeared after subsection (1) and finding that the "court directed service is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"). Only when "there is no internationally agreed means" or "an international agreement allows but does not specify

[alternative] means" may a party effect service by the alternatives in subsections (2) and (3).  See

Fed. R. Civ. P. 4(f)(2).  When subsections (2) and (3) apply, there is no hierarchy of service methods

that a party must employ, as demonstrated by the use of the conjunction "or."  See Fed. R. Civ. P.

4(f)(2)-(3).  All alternative methods stand on an equal footing; and parties, along with the court, are

free to choose any method as long as it is "reasonably calculated to give notice."  Fed. R. Civ. P.

4(f)(2); cf. Rio Props., 284 F.3d at 1015 (analyzing a prior version fo Rule 4).

### A.  The Hague Service Convention is Inapplicable

The first question is whether the Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658

U.N.T.S. 163 [hereinafter Hague Service Convention], applies.  If it does, Rule 4 requires the parties

first to attempt service by the means designated in the Convention.  See Fed. R. Civ. P. 4(f)(1).  Both

China and the United States have signed the Hague Service Convention.  See Status Table:

Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents

in Civil or Commercial Matters, Hague Conference on Private International Law, available at

http://hcch.e-vision.nl/index_en.php?act=conventions.status&cid=17 (last visited Mar. 9, 2010)

(listing the current contracting states).  However, Article 1 of the Convention provides, "This

Convention shall not apply where the address of the person to be served with the document is not

known."  Hague Service Convention, art. 1.  Chanel has attempted to verify Defendant's addresses

and has determined that each is fraudulent.  Because the address of Defendant is not known, the

Hague Service Convention does not apply to the present suit.  Id.; accord BP Prods. N. Am., Inc. v..

Dagra, 236 F.R.D. 270, 271 (E.D.Va. 2006) ("[T]he Hague Convention does not apply when a

defendant's address is unknown."); Popular Enters., 225 F.R.D. at 562 (same).[2]

**B. Service by E-Mail Comports with the Requirements of both Rule 4(f)(3) and Due Process**

Because the Convention does not apply, this Court has broad authority to determine an appropriate alternative method of service.  See Fed. R. Civ. P. 4(f)(2)-(3); Rio Props., 284 F.3d at 1015-16; BP Prods., 236 F.R.D at 271.  Any court-approved service method, however, must meet the constitutionally mandated due process requirements of "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted).  A method of service is constitutionally permissible as long as it meets these two tests.  Id.

Serving Defendant by e-mail not only meets constitutional standards, but also is the method of service most likely to reach Defendant.  Defendant has organized his online businesses so that the only way customers can contact him to place an order or lodge an inquiry is by e-mail.  Although every physical address listed by Defendant proved to be fraudulent upon investigation, every e-mail account listed was active.  This is hardly surprising.  Any e-commerce merchant depends on electronic communication, and in particular e-mail, for his livelihood.  See Alexandra Jacobs, Happy

---

[2]  The Hague Convention does not affirmatively prohibit service via e-mail.  Compare Fed. R. Civ. P. 4(f)(3) (prohibiting service of process if an international agreement prohibits the method chosen), with Hague Service Convention, art. 11 (allowing contracting states "to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for" in the treaty), and Popular Enters., 225 F.R.D. at 562 (authorizing service by e-mail on foreign defendant located in the Hague Service Convention signatory state of Portugal).  No other international treaty appears to be implicated.

Feet: Inside the Online Shopping Utopia, The New Yorker, Sept. 14, 2009, at 67 (noting that most webmerchants "seem to be operated by spectral forces rather than human beings" because they handle customer service solely by e-mail).  Even "e-business scofflaw[s]," Rio Props., 284 F.3d at 1018, must maintain valid e-mail accounts and check them regularly to receive new orders and provide customers with receipts and shipping information.

Although e-mail is a relatively new innovation, all sectors of the business community have adopted it quickly as a reliable, fast, and effective means of communication.  Rio Props., 284 F.3d at 1017 (noting that the "business community" has "zealously embraced" e-mail.).  The current Federal Rules of Civil Procedure specifically allow service by electronic means, where a party gains the consent in writing of the party to be served.  See Fed. R. Civ. P. 5(b)(2)(E).  The federal judiciary's own CM/ECF system alerts parties to a suit to new case filings and the court's rulings on pending motions by e-mail messages.  As one court has aptly noted, "Courts . . . cannot be blind to changes and advances in technology."  New England Merchs. Nat'l Bank v. Iran Power Generation and Transmission Co., 495 F. Supp. 73, 81 (S.D.N.Y. 1980). Given these considerations, effecting service on e-commerce merchants at their preferred e-mail addresses comports with the Mullane standard and provides the greatest likelihood of generating a response from the served parties.  See New England Merchs., 495 F. Supp. At 81.  ("No longer must process be mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut." (footnote omitted)); cf. Broadfoot v. Diaz (In re Int'l Telemedia Assocs., Inc.), 245 B.R. 719, 719-21 (Bankr. N.D.Ga. 2000) (first federal court

8

decision authorizing service by e-mail).[3]

### III.  Conclusion

Because Chanel has diligently attempted to locate valid addresses for Defendant without success, the Court finds that alternative service of process is warranted.  The Court, therefore, DIRECTS Chanel to serve a copy of all pleadings on Defendant by e-mail at the known e-mail addresses—amazingbag@gmail.com,   amazingbag@hotmail.com,   ioffershoes@yahoo.com.cn, ioffershoes@hotmail.com, gorxleather@yahoo.com.cn, and asonzhong@yahoo.com.  Because Defendant's websites and e-mailed responses are in English, service in Mandarin or other foreign languages is not required at this time.  Cf. New England Merchs., 495 F. Supp. At 81 (requiring service upon Iranian state agency in Farsi).  After Chanel has completed service by e-mail, the Court DIRECTS Chanel to file an affidavit with the Clerk of Court reflecting its compliance with this order.  Should Defendant enter a formal appearance pro se or by counsel, service of process should revert to standard processes.  On these conditions, the Court GRANTS Chanel's motion for alternative service of process under Rule 4(f)(3).

**IT IS SO ORDERED** this 17th day of March, 2010.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

---

[3] Service by e-mail does not appear to violate Chinese law.  Article 84 of the Civil Procedure Law of the People's Republic of China states that "[i]f the whereabouts of a recipient . . . is unknown . . . the document shall be served by public announcement."  Service by e-mail would not appear to conflict with this provision, and it is questionable whether service effected under Rule 4(f)(3) must always align with the methods authorized in the foreign country where service will take place.  See Rio Props., 284 F.3d at 1015 n.5 (noting that the advisory committee's note suggesting that a court may not authorize a service method that would violate the foreign state's laws only applies to service effected under Rule 4(f)(2)).